IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| BILLY GENE KISLING, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 21-05025-CV-SW-WBG |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION AFFIRMING**
**COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff Billy Kisling's appeal of Defendant Acting Commissioner of Social Security's final decision denying his application for disability insurance benefits. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in 1967 and has a GED. R. at 20, 35, 175, 177, 222, 279-83. He previously worked as a coil assembler (machine). R. at 20, 51. In January 2019, Plaintiff protectively applied for disability insurance benefits alleging a disability onset date of September 1, 2017. R. at 10, 175-83. In May 2019, his application was denied. R. at 73-77. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 79-80.

On July 24, 2020, ALJ Dennis LeBlanc held a telephone hearing during which Plaintiff and a vocational expert testified. R. at 29-55. Thereafter, on August 11, 2020, the ALJ issued a

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is automatically substituted for former Commissioner of the Social Security Administration Andrew Saul as Defendant in this suit.

decision finding Plaintiff is not disabled. R. at 10-27. He concluded Plaintiff's severe impairments are "rheumatoid arthritis, also noted as osteoarthritis, and chronic obstructive pulmonary disease (COPD)." R. at 12. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [He can] lift and carry 20 pounds occasionally, ten pounds frequently, stand and/or walk six hours out of an eight-hour day, and sit six hours in an eight-hour day. The claimant may occasionally climb ramps and stairs but no ladders, ropes or scaffolds. He may occasionally stoop, kneel, crouch, and crawl. The claimant may frequently reach and occasionally handle and finger. He should avoid work environments with extreme heat, concentrated exposure to smokes, fumes dusts, gases, and workplace hazards such as dangerous machinery or unprotected heights.

R. at 15.

Based on his review of the record, his RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff can work as a furniture rental consultant, laminating machine off-bearer, or school bus monitor (driver). R. at 21, 52. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-4, 172-74. He now appeals to this Court. Doc. 3.

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)). In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the court must affirm. *See id.*

### III. DISCUSSION

Plaintiff's sole issue on appeal is whether the ALJ properly considered his reports of subjective fatigue when assessing his RFC. Doc. 16 at 1, 10-16; Doc. 22 at 1-4. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004), and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).

A.  **Subjective Complaints – Standard**

SSR 16-3p eliminates use of the term "credibility" and clarifies that the review of a claimant's subjective complaints is not an examination of his character, but rather, "is an

examination for the level of consistency between subjective assertions and the balance of the record as a whole." *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020); *see* Social Security Ruling 16-3p, 2016 WL 1020935 (Mar. 16, 2016). When evaluating a Social Security claimant's subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ is not required to discuss each of these factors. *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

A reviewing court does not reweigh the evidence before the ALJ. *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citation omitted). Additionally, the Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). This is because determinations about credibility "are the province of the ALJ," and therefore, this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

B. **Evidence in the Record**[2]

(1) **Medical Records**

On April 10, 2019, Plaintiff was seen by David True, D.O., at Mercy Hospital Carthage for his rheumatoid arthritis. R. at 485-88. He reported a number of symptoms including, *inter alia*, lack of energy and fatigue. R. at 486-87. In July 2019, Dr. True evaluated Plaintiff for seropositive arthritis. R. at 595-99. And at that time, Plaintiff's complaints included fatigue, joint pain, joint swelling, joint stiffness, burning of hands and feet, and sleep disturbance. R. at 596-97. Dr. True also noted fatigue during appointments in May 2020. R. at 658.

Jonathan Manzer, M.D. was Plaintiff's primary health care provider from February 2018 through May 2020. *See* R. at 408-61, 577-94, 634-57, 673-76. In April 2018, Plaintiff saw Dr. Manzer and complained of, *inter alia*, on and off fatigue that was "worse at the end of the day." R. at 438, 441. In May 2018, Plaintiff saw Dr. Manzer for a four-week follow-up appointment to review his labs. R. at 435-37. At that time, Plaintiff complained of fatigue "for DAYS on and off, worse at the end of the day." R. at 435 (emphasis in original). He reported the onset was "gradual," and the severity was "mild to moderate." *Id*. Dr. Manzer gave Plaintiff a B12 injection, at Plaintiff's request, and instructed Plaintiff to start an exercise program. R. at 437.

In November 2018, Plaintiff twice presented to Dr. Manzer with a chief complaint of joint pain. R. at 411, 417. He again complained of fatigue that was "worse at the end of the day." *Id*. In February, March and April 2019, Dr. Manzer saw Plaintiff for joint pain, morning stiffness, and fatigue. R. at 451, 453, 590. In April 2019, Plaintiff also stated he was "always tired" when discussing insomnia and sleep difficulties. R. at 590.

---

[2] A vast majority of the medical records available relate to Plaintiff's rheumatoid arthritis and COPD. However, because the sole issue in this appeal relates to Plaintiff's fatigue, the Court does not detail his longitudinal medical history.

In February and March 2020, Dr. Manzer completed Medical Source Statements – Physical ("MSSP"). R. at 619-21, 623-25. In each MSSP, Dr. Manzer was asked to "list your Patient's symptoms, including pain, dizziness, fatigue." R. at 619, 623 (emphasis in originals). Dr. Manzer stated Plaintiff's symptoms were "severe pain with joint swelling" and "pain + joint swelling." *Id*. Dr. Manzer did not list fatigue as Plaintiff's symptoms on either MSSP. *See id*.

In both MSSPs, Dr. Manzer opined Plaintiff would likely be off task at least twenty to twenty-five percent of the workday. R. at 621, 625. He concluded Plaintiff would miss work four days per month, would need to take unscheduled breaks during an eight-hour workday, and would need to rest for thirty minutes to two hours before resuming work. *Id*. In support of his opinion that unscheduled breaks were necessary, Dr. Manzer cited Plaintiff's "Pain, Paresthesia, Numbness" and "Muscle weakness." *Id*. Despite the form also listing "Chronic Fatigue" as a possible basis for unscheduled breaks, Dr. Manzer did not check the box for chronic fatigue on either MSSP form. *Id*.

Although there are records of Plaintiff complaining of fatigue, there are also records of him denying fatigue. For example, in February 2019, Plaintiff denied fatigue at an appointment with Dr. Manzer. R. at 427. Also, in April 2019, October 2019, January 2020, March 2020, and July 2020, medical providers indicated Plaintiff was "negative" for fatigue when he presented to Mercy Hospital. R. at 484, 606, 611, 628, 679. There is no mention of fatigue in many of Plaintiff's remaining medical records. *See*, *e.g.*, R. at 355-56, 387-94, 419-30, 446-48, 577-84, 587-89, 634-37, 641-42, 653-56, 673-74, 677-82.

**(2) Plaintiff's Disability Report and Function Report**

In February 2019, Plaintiff completed a Disability Report. R. at 220-29. Therein, he was asked to identify "all of the physical or mental conditions . . . that limit your ability to work." R.

at 221. Plaintiff listed the following medical conditions: rheumatoid arthritis, depression, hypothyroidism, and diraticulitis. *Id*. When asked to explain why he stopped working, Plaintiff stated, "Health is deteriorating and the working conditions were exasperating my symptoms (i.e. intolerable high heat, high stress, etc.)." *Id*. Nowhere in the Disability Report did Plaintiff identify fatigue as an impairment or symptom. *See* R. at 220-29.

In March 2019, Plaintiff completed a Function Report – Adult. R. at 233-40. Therein, he was asked to explain how his "illnesses, injuries, or conditions limit his ability to work." R. at 233. Plaintiff reported the "[p]ain in my hands limits my ability to grasp or handle objects," and "[p]ain in my knees and feet make it difficult to walk very far or stand very long." *Id*. Nowhere in the Function Report did Plaintiff identify fatigue, excessive tiredness, or lack of sleep. *See* R. at 233-40. During the hearing before the ALJ, Plaintiff testified he experienced "bad fatigue" and was worn out by activities he could previously endure due to his rheumatoid arthritis. R. at 37, 42-43.

C.  **The ALJ's Consideration of Fatigue**

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. at 16. He found Plaintiff's statements were "inconsistent with the longitudinal evidence." R. at 18. The ALJ noted Plaintiff's rheumatoid arthritis was supported by "seropositive results, elevated rheumatoid factor, complaints and [ ] treatment." *Id*. (citing 2F (R. at 354-86), 3F (R. at 387-407), 4F (R. at 408-50), and 8F (R. at 481-507)). And he specifically referenced and considered progress notes showing Plaintiff's complaints of *fatigue*, morning stiffness, and joint pain and swelling. *Id*. (citing 9F (R. at 508-75)) (emphasis added).

While the ALJ acknowledged Plaintiff's rheumatoid arthritis improved some, he also noted Plaintiff later reported the medicine was no longer working and was causing side effects, and he complained of pain, fatigue, and morning stiffness lasting an hour. R. at 17. However, the ALJ recognized that Plaintiff's condition ultimately improved with different medication. *Id.* Although Plaintiff still reported some symptoms, the ALJ observed his progress notes showed improvement. R. at 18. According to the ALJ, the record as a whole shows that although the rheumatoid arthritis is limiting, the record also establishes an ability to perform light exertional work. *Id.*

The ALJ found Dr. Manzer's MSSPs to be "unpersuasive." R. at 18. Specifically, he found Dr. Manzer's opinion from February 2020 that Plaintiff could rarely lift and carry less than ten pounds and his opinion from March 2020 that Plaintiff could rarely lift ten pounds to be unsupported by Plaintiff's activities of daily living. *Id*. at 18-19. Further, the ALJ noted Dr. Manzer's opinion that Plaintiff could be off task twenty to twenty-five percent of the workday and would miss four days of work per month was unsupported by Plaintiff's normal attention span and concentration along with "objective evidence of improvement." *Id*.

In addition to the medical records discussed above, the ALJ also considered Plaintiff's activities of daily living. R. at 18. Specifically, he noted that despite his impairments, Plaintiff was able to "care for himself, drive, shop, use a computer, and perform household tasks." *Id*. While his ability to perform these daily activities does not disprove disability, "[i]nconsistencies between subjective complaints . . . and daily living patterns may . . . diminish credibility." *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (citation and internal quotations omitted). The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about their limitations. *Id.*

The available medical records relating to Plaintiff's subjective reports of fatigue are unremarkable. The medical records contain instances in which Plaintiff reported experiencing fatigue. *See e.g.*, R. at 435, 441, 485-88, 559, 590. Yet, the medical records often do not include reports of fatigue. *See*, *e.g.*, *supra*, section III(B). This detracts from Plaintiff's allegations of disabling fatigue. *See Julin*, 826 F.3d at 1087 (noting inconsistent or contradictory statements made to physicians are a proper basis to discount a claimant's credibility).

As such, the Court finds the ALJ's analysis of Plaintiff's subjective complaints was consistent with SSR 16-3p and was supported by substantial evidence. His opinion discusses the relevant medical and other evidence in the record, and he explicitly considered Plaintiff's allegations of fatigue. Despite Plaintiff's arguments to the contrary, the ALJ's consideration of his fatigue was proper, and therefore, the Court must affirm the Acting Commissioner's decision.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Acting Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE:     May 9, 2022                             */s/ W. Brian Gaddy*
                                                  W. BRIAN GADDY
                                                  UNITED STATES MAGISTRATE JUDGE